267 N.J. Super. 611 (1993)
632 A.2d 544
DYNASTY BUILDING CORPORATION, PLAINTIFF-RESPONDENT,
v.
BOROUGH OF UPPER SADDLE RIVER, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; THE MAYOR AND COUNCIL OF THE BOROUGH OF UPPER SADDLE RIVER; AND THE PLANNING BOARD OF THE BOROUGH OF UPPER SADDLE RIVER, DEFENDANTS-RESPONDENTS, AND UNITED CITIZENS OF UPPER SADDLE RIVER; BOROUGH OF RAMSEY; CONCERNED CITIZENS OF UPPER SADDLE RIVER AND RAMSEY; EFSHER PROPERTY ASSOCIATES,[*] DEFENDANTS-INTERVENORS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1993.
Decided October 29, 1993.
*612 Before Judges MICHELS, SKILLMAN and KESTIN.
William I. Strasser argued the cause for appellant United Citizens of Upper Saddle River (Donohue, Donohue, Costenbader & Strasser, attorneys; Mr. Strasser, of counsel, and with Michael A. Gallucci, on the brief).
James F. Brennan argued the cause for appellant Borough of Ramsey (Mr. Brennan, with Matthew S. Rogers and Andrew T. Fede, on the joint brief).
Matthew S. Rogers argued the cause for appellant Concerned Citizens of Upper Saddle River and Ramsey (Contant, Scherby & Atkins, attorneys; Mr. Rogers, with Messrs. Brennan and Fede, on the joint brief).
Robert T. Regan argued the cause for all Upper Saddle River respondents (Mr. Regan, on the brief).
No brief was filed by any other party.
The opinion of the court was delivered by KESTIN, J.A.D.
Plaintiff filed suit in October 1988 claiming a right to the builder's remedy established in Southern Burlington County *613 N.A.A.C.P. v. Township of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983) (Mt. Laurel II). On October 6, 1989, the trial court entered an order embodying a finding that the Borough of Upper Saddle River (Borough) had engaged in exclusionary zoning, directing the Borough to revise its zoning ordinances and land use regulations to comport with its constitutional obligations, and appointing a master to assist the Borough in meeting that goal and to advise the court in the matter.
Soon thereafter, on December 7, 1989, the intervention motion of Fox Hill-Winding Way Homeowners Association, Inc., presently known as United Citizens of Upper Saddle River (United Citizens), was granted. The order expressly provided that the court might, in the future, "bar or limit" United Citizens' "participation in any phase of the case in which its interests are adequately represented by the Borough of Upper Saddle River or the Planning Board of the Borough of Upper Saddle River." On November 12, 1991, the trial court also granted the intervention motions of the Borough of Ramsey (Ramsey) and Concerned Citizens of Upper Saddle River and Ramsey (Concerned Citizens). That order embodied two limitations. First, "the participation of these intervenors [was] limited solely to the issues of suitability of the parcels of land on East Crescent Avenue for Mt. Laurel development." Additionally, the court noted that it might in the future "bar participation [of Ramsey and Concerned Citizens] when their interests are represented by other parties to this action."
The issues pertaining to the development of plaintiff's site were settled. The Borough submitted its compliance plan on February 24, 1992. United Citizens then moved to dismiss the complaint; for leave to depose the Borough's municipal planner, the mayor, a member of the municipal council, and the court-appointed master; and for leave to participate in the matter as a party defendant. All aspects of the motion were denied except that the deposition of the municipal planner was permitted.
*614 A compliance hearing was held in July 1992. A decision was rendered on August 7 and a formal judgment was entered on November 9, 1992. The judgment, approving the compliance plan with 119 low and moderate income housing units, contained certain conditions among which was a provision requiring the Borough and Ramsey to
revise and update their intermunicipal agreement governing the providing of sewer service by Ramsey (the 1979 Ten Cees Agreement) to accommodate Upper Saddle River's Compliance Plan consistent with the decision of the Court, which revision and modification shall be accomplished by October 15, 1992.
Defendants-intervenors appeal from the entry of the judgment of compliance and repose. Plaintiff has not participated in the appeal.
Our review of the record as illuminated by the arguments of the parties discloses that most of the issues advanced by defendants-intervenors do not establish a basis for undoing what the trial court and the parties accomplished in this proceeding. The evidence supports the determinations that the compliance plan is fair and reasonable, embodying realistic means by which the Borough may discharge its constitutional and statutory responsibilities to provide for low and moderate income housing; and, with the possible exception of one set of issues relating to sewer service, that the inclusionary sites are suitable for the type of development contemplated. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 483-84, 323 A.2d 495 (1974). The manner in which the trial court limited the scope of participation of United Citizens and Concerned Citizens was fair and appropriate, in no significant way restricting their opportunity to advance the legitimate interests of the persons they represented. Neither did the discovery limitations nor an order denying United Citizens' motion to supplement the record (which was also denied on appeal) unduly impede these intervenors from making appropriate showings on material issues.
We also do not see the trial court as having erred conceptually when it determined that the scope of Ramsey's intervention would be limited. We are persuaded, however, that, as matters *615 developed, the scope of the limitation imposed was too narrow to permit a proper vindication of Ramsey's legitimate interests in the outcome of this lawsuit. We also regard a related ruling at the compliance hearing to have been erroneous for the same reason.
Ramsey's motion to intervene was based upon the impact that development of the inclusionary site known as the Triune Church property and adjacent tracts (East Crescent Avenue site) would have on interests of the Ramsey community, including a sewer system in which Ramsey owns the primary interest. The sewer system, under a contract known as the Ten Cees Agreement, serves a portion of the Borough in addition to serving Ramsey and Allendale, the municipalities which financed its construction. The certifications supporting Ramsey's application to intervene referred generally to anticipated "adverse impact and deleterious effects" upon Ramsey from development of the East Crescent Avenue site, situated on the border between the Borough and Ramsey. The responsive certifications referred to infrastructure support for the site, specifically mentioning available "sewer and water service." Later in the pendency of this case, beginning with the compliance plan dated February 1992, other sites which would impact upon the sewer system were also included for development. By the time of the compliance hearing, there were three such additional sites: RAM, Efsher (Roebling), and Secor.
On the eve of trial, the Borough served on Ramsey and the other parties a report from Justin Mahon, an expert on the capacity of wastewater treatment projects. The Mahon report addressed sewer capacity issues raised by the master and alluded to, two months earlier, in the master's report on the Borough's compliance plan. To a significant extent, the Mahon report contained information and positions which had not been previously advanced. Ramsey sought an opportunity to depose Mahon and to take other appropriate steps to meet those contentions of the Borough which would be based on his report. The trial court denied this application, limiting Ramsey's opportunity for joining issue on these matters to what could be elicited on cross-examination *616 of Mahon. Then, the trial court in its decision relied extensively on the Mahon report in concluding that sufficient sewer service and capacity was available to serve the needs of the East Crescent Avenue site and the other, later included, tracts. Ramsey and the Borough were ordered to revise and update the Ten Cees agreement to accommodate the compliance plan.
We reject Ramsey's contention that the trial court exceeded its jurisdiction in ordering the revision of the Ten Cees agreement. Ramsey had become subject to the court's jurisdiction when its motion to intervene was granted. Issues of cost-bearing responsibility aside, an order requiring Ramsey to make existing sewer capacity available to Mt. Laurel inclusionary development sites comports with the concept that municipal obligations to provide for low and moderate income housing are established on the basis of regional responsibility. See Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel (Mt. Laurel II), supra, 92 N.J. at 208, 456 A.2d 390; Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel, 67 N.J. 151, 179-80, 336 A.2d 713, appeal dismissed, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) (Mt. Laurel I).
For such an order to be effective, however, it must be the product of a proceeding in which every affected party has had an adequate opportunity to meet the proofs that inform the trial court's decision. Ledezma v. A & L Drywall, 254 N.J. Super. 613, 618, 604 A.2d 169 (App.Div. 1992). With respect to the impact of the compliance plan on its sewer system, Ramsey was not accorded that opportunity.
Faced with an expert's report which introduced new matter that dealt directly with an issue at the core of Ramsey's concerns, and with impending testimony based on that report, the trial court had two choices. It could have precluded the testimony and reliance on the report because Ramsey had not had ample time to prepare to meet the newly advanced matter; or, preferably, it could have ordered a brief, but adequate, continuance on sewer issues to afford Ramsey an appropriate opportunity to do so. The means *617 chosen to resolve the problem simply did not afford Ramsey a fair opportunity to vindicate its legitimate interests in the outcome.
At the time Ramsey intervened in 1991, the RAM, Efsher (Roebling) and Secor inclusionary sites were not part of the developing compliance plan. Thus, the trial court's decision to limit the scope of Ramsey's intervention to the East Crescent Avenue site was proper at the time, for that was the only tract that then had a potential impact on the sewer system and other of Ramsey's concerns. As the compliance plan developed to include other sites, Ramsey's special interest in the impact of inclusionary development on its sewer system required that the scope of Ramsey's intervention be broadened concomitantly.
Accordingly, the trial court's decision is affirmed in all respects except that regarding the question of whether sufficient sewer service and capacity exists to serve those inclusionary sites which require access to Ramsey's sewer system. The matter is remanded for a hearing between the Borough and Ramsey on that issue alone, followed by findings and such modifications in the compliance plan and judgment as may be necessary.
NOTES
[*] Shortly before oral argument, counsel for Intervenor Efsher Property Associates filed a stipulation dismissing its appeal.